IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANE AARON ABBOTT,                    Case No. 3:11-cv-01047-MO

          Petitioner,

     v.                                  OPINION AND ORDER

J.E. THOMAS, Warden,

          Respondent.


STEPHEN R. SADY
Office of the Federal Public Defender
101 SW main Street, Suite 1700
Portland, OR  97204

    Attorney for Petitioner


S. AMANDA MARSHALL
United States Attorney
RONALD K. SILVER
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902

    Attorneys for Respondent


1 - OPINION AND ORDER

Mosman, District Judge.

Petitioner, an inmate at the Federal Correctional Institution, Sheridan, Oregon, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. He alleges that the Bureau of Prisons ("BOP") rules that categorically bar him from participating in the Residential Drug Abuse Program ("RDAP") based on outstanding state bench warrants that expire prior to his release from federal custody are invalid under the governing statute and under § 706 of the Administrative Procedures Act ("APA"). Petitioner also challenges the rule under which he is ineligible for the RDAP-related sentence reduction incentive under 18 U.S.C. § 3621(e). The Court finds that the BOP's rules that define admission criteria for RDAP beyond the eligibility criteria specified in the statute, and that disqualify inmates with detainers who cannot complete all the required components of the program, are a valid exercise of the BOP's authority. The Court also finds that Petitioner's challenge to BOP rules that render him ineligible for sentence reduction is without merit. Accordingly, the Amended Petition for Writ of Habeas Corpus (#11) is DENIED.

## BACKGROUND

### I.   Statement of the Case

On April 1, 2010, Petitioner was convicted of Conspiracy to Distribute Marijuana in violation of 21 U.S.C. § 846 in the United States District Court, District of Montana, and sentenced to 60 months imprisonment and 5 years post-prison supervision. (#12, Ex.

2 - OPINION AND ORDER

G at 6.)   The sentencing court recommended Petitioner participate in the Residential Drug Abuse Program ("RDAP") if eligible.   (*Id.*) Petitioner was designated to FCI Sheridan ("Sheridan") on June 16, 2010.   (#21, at 5.)   His projected good conduct time release date is August 3, 2014.   (#20, Attach. 1 at 1.)

At the time Petitioner was sentenced, there were two outstanding bench warrants issued in 2005 and 2006 by Kitsap County, Washington, for failure to appear.[1]   (#11, at 5.)   A bench warrant from Missoula Municipal Court, Montana, issued in 2009 Case # 2008-1997, was also outstanding.   (#21, at 3.)   As a result of the outstanding warrants, Petitioner's Unit Team at Sheridan concluded Petitioner was not eligible for Residential Reentry Center ("RRC") placement pursuant to Program Statement 7310.04(10)(f), which provides, in relevant part, that inmates "with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement" will not ordinarily be allowed to participate in RRC programs.[2]   (*Id.*, at 4.) Petitioner's first Program Review Report, dated June 30, 2010, listed the outstanding warrants as "pending charges" and provided

---

[1]Bench warrant in *Washington v. Abbott*, Case No. 13272208 expires April 7, 2013; bench warrant in *Washington v. Abbott*, Case No. 13272209 expires on May 27, 2014.   (#11, Amended Pet. at 5.)

[2]In prison litigation, Residential Reentry Center ("RRC") placement may also be referred to as Community Correction Center ("CCC") placement or "halfway house" placement.

Petitioner written notice that he was not eligible for RRC placement as a result of the warrants. (*Id.*, at 5-6.)

Petitioner's Unit Team advised the Drug Abuse Treatment Program Coordinator of Petitioner's ineligibility for RRC placement. RRC placement is a required component of RDAP. On September 23, 2011, the Drug Abuse Treatment Coordinator at Sheridan interviewed Petitioner for RDAP eligibility and advised Petitioner that he did not qualify for RDAP due to "a pending issue that would prevent him from attending a halfway house." (#21, Attach. 3.) Petitioner's Unit Team advised him that a possible consequence of placement in an RRC when outstanding warrants exist would be his arrest on the state warrants. If arrested, "he would be placed in escape status, and any time he would spend in law enforcement custody would not be credited toward his federal sentence once he was returned to federal custody." (#21, at 7.)

On August 26, 2011, Petitioner filed a Motion to Compel in this court pursuant to 28 U.S.C. § 1361. Petitioner sought to enjoin the BOP from giving effect to the outstanding state bench warrants that prevent his participation in RDAP and RRC placement, and require that he be held in a medium security facility. (#2.) Petitioner asserted that his and the BOP's repeated efforts to move Washington and Montana to a final disposition of the matters were fruitless. (*Id.*) The Court construed Petitioner's motion as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and granted the accompanying Motion for Appointment of Counsel on

4 - OPINION AND ORDER

September 16, 2011.[3]  On December 2, 2011, with the assistance of
counsel, Petitioner filed an Amended Petition (#11), in which he
argues that the rules excluding inmates with detainers from RDAP on
the basis they are unable to complete the RRC component, violate
the governing statute.  (#25, Reply at 4-7.)  He further asserts
that, even if the rules are a valid exercise of the BOP's authority
under the statute, the rules are procedurally invalid under the
APA.  (*Id.* at 11-12.)

II.  <u>Statutory Framework</u>

Congress vested the "control and management of Federal penal
and correctional institutions" in the Attorney General, "who shall
promulgate rules for the government thereof . . . ."  18 U.S.C.
§ 4001.  In § 4042(a), Congress specified:

"The Bureau of Prisons, under the direction of the
Attorney General, shall -

(1) have charge of the management and regulation of all
Federal penal and correctional institutions;

* * *

(3) provide for the protection, instruction, and
discipline of all persons charged with or convicted of
offenses against the United States."

In 18 U.S.C. § 3621, Congress specified, in relevant part:

(b) Place of imprisonment.-- The Bureau of Prisons shall
designate the place of the prisoner's imprisonment. The
Bureau may designate any available penal or correctional

---

[3]In appointing counsel, it was the Court's expectation that
counsel would assist Petitioner in his efforts to obtain final
disposition of the outstanding state court warrants that give
rise to his ineligibility for RRC placement.

facility . . . that the Bureau determines to be
appropriate and suitable, considering-
(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence-
   (A) concerning the purposes for which the sentence
   to imprisonment was determined to be warranted; or
   (B) recommending a type of penal or correctional
   facility as appropriate; and
(5) any pertinent policy statement issued by the
Sentencing Commission pursuant to section 994(a)(2) of
title 28.

In designating the place of imprisonment or making
transfers under this subsection, there shall be no
favoritism given to prisoners of high social or economic
status. The Bureau may at any time, having regard for
the same matters, direct the transfer of a prisoner from
one penal or correctional facility to another. **The
Bureau shall make available appropriate substance abuse
treatment for each prisoner the Bureau determines has a
treatable condition of substance addiction or abuse.** Any
order, recommendation, or request by a sentencing court
that a convicted person serve a term of imprisonment in
a community corrections facility shall have no binding
effect on the authority of the Bureau under this section
to determine or change the place of imprisonment of that
person.

(Emphasis added.) Section 3621(e) mandates residential substance

abuse treatment programs, and reads in relevant parts, as follows.

(1) Phase-in.
   **In order to carry out the requirement ... that
   every prisoner with a substance abuse problem
   have the opportunity to participate in
   appropriate substance abuse treatment, the
   Bureau of Prisons shall, subject to the
   availability of appropriations, provide
   residential substance abuse treatment (and
   make arrangements for appropriate aftercare)-**

   * * *

   (C) **for all eligible prisoners by the end of
   fiscal year 1997 and thereafter,** with priority

for such treatment accorded based on an
eligible prisoner's proximity to release date.

(2) Incentive ....

(B) Period of custody.--The period a prisoner
convicted of a nonviolent offense remains in
custody after successfully completing a
treatment program may be reduced by the [BOP],
but such reduction may not be more than one
year from the term the prisoner must otherwise
serve.

(3) Report.--The [BOP] shall transmit to [named
Congressional Committees an annual report].
Such report shall contain--

(A) **a detailed quantitative and qualitative
description of each substance abuse treatment
program, residential or not, operated by the
Bureau;**
**(B) a full explanation of how eligibility for
such programs is determined, with complete
information on what proportion of prisoners
with substance abuse problems are eligible;**
and
(C) a complete statement of to what extent the
[BOP] has achieved compliance with the
requirements of this title.

(Emphasis added.) Section 3621(e)(5) provides definitions for sub-

section 3621(e), and specifies:

(A) the term "residential substance abuse treatment"
means a course of individual and group activities and
treatment, lasting at least 6 months, in residential
treatment facilities set apart from the general prison
population ....";

**(B) the term "eligible prisoner" means a prisoner who
is--**
**(i) determined by the Bureau of Prisons to have a
substance abuse problem, and**
**(ii) willing to participate in a residential substance
abuse treatment program[.]**

7 - OPINION AND ORDER

(C) the term "aftercare" means placement, case management and monitoring of the participant in a community-based treatment program when the participant leaves the custody of the Bureau of Prisons.

(Emphasis added.)    Section 3624(c), provides for prerelease custody, and specifies:

(1) In general.--The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.   Such conditions **may include a community correctional facility.**
* * *
(4)No limitations.--**Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621.**

(Emphasis added.)

III. Regulatory Framework and Internal Agency Guidelines

In response to the mandate in 3621(e) to provide residential drug treatment, the BOP established RDAP.   The implementing regulations for all BOP drug treatment programs are codified at 28 C.F.R. §§ 550.50-550.56.   Sections 550.53-550.56 are specific to RDAP and the Transitional Drug Abuse Treatment ("TDAT") component. The regulations that apply to Petitioner were published in 2009, following notice-and-comment rule-making under § 553 of the APA. See 74 Fed. Reg. 1892-01 (January 14, 2009).

Section 550.53(a) defines the three components of drug treatment that are required for prisoners to successfully complete

RDAP.[4]   Section 550.53(b) sets out admission criteria for the program.[5]  Section 550.53(e) specifies that the Drug Abuse Program Coordinator decides whether to place inmates in RDAP based on the admission criteria set forth in § 550.53(b).[6]  Section 550.56 sets

[4]§ 550.53  Residential Drug Abuse Treatment Program (RDAP)

(a)  RDAP.  To successfully complete the RDAP, inmates must complete each of the following components:
(1)  *Unit-based component*.  Inmates must complete a course of activities provided by drug abuse treatment specialists and the Drug Abuse Program Coordinator in a treatment unit set apart from the general prison population.  This component must last at least six months.
(2)  *Follow-up services*.  If time allows between completion of the unit-based component of the RDAP and transfer to a community-based program, inmates must participate in the follow-up services to the unit-based component of the RDAP.
(3)  *Transitional drug abuse treatment (TDAT) component*.  Inmates who have completed the unit-based program and (when appropriate) the follow-up treatment and are transferred to community confinement must successfully complete community-based drug abuse treatment in a community-based program to have successfully completed RDAP.  The Warden, on the basis of his or her discretion, may find an inmate ineligible for participation in a community-based program.

[5]§ 550.53(b)   *Admission Criteria*.  Inmates must meet all of the following criteria to be admitted into RDAP.
a.(1) Inmates must have a verifiable substance use disorder.
b.(2) Inmates must sign an agreement acknowledging program responsibility.
c. (3) When beginning the program, the inmate must be able to complete all three components described in paragraph (a) of this section.
* * *
d. Ordinarily, have 24 months or more remaining on their sentence.

[6]§ 550.53(e) *Placement in RDAP*.  The Drug Abuse Program Coordinator decides whether to place inmates in RDAP based on the

out the Transitional Drug Abuse Treatment Program.[7]  BOP internal

agency guidelines in Program Statement (PS) P5330.11 restate the

regulations and provide further implementing instructions for the

various drug abuse programs.  With respect to the Drug Abuse

Program Coordinator's decision whether to place inmates in RDAP, PS

P5330.11, chpt 2.5.9 specifies:

> The DAPC must also determine if the inmate can fully
> engage in treatment: i.e., communicate in English and/or
> comprehend treatment expectations. * * * In some
> instances, the DAPC may find the inmate cannot fully
> engage in treatment and does not qualify for the program,
> even if there is substantiating documentation (see 18
> U.S.C. § 3624(f)(4)[mandatory functional literacy
> requirement] and 28 C.F.R. §§ 544.40-544.44 [mandatory
> English-as-a-second-language program]).

With respect to TDAT, PS P5330.11, chpt 2.7.2 specifies:

> 2.7.2.  RRC Placement.  Ordinarily, inmates who
> participate in the TDAT must receive no less than a 120-
> day placement in an RRC.  It is not always possible to

criteria set forth in paragraph (b) of this section.

[7]§ 550.56 Community Transitional Drug Abuse Treatment
Program (TDAT).

> (a)  **For inmates to successfully complete all
> components of RDAP, they must participate in TDAT in
> the community.**  If inmates refuse or fail to complete
> TDAT, they fail the RDAP and are disqualified for any
> additional incentives.
> (b)  Inmates with a documented drug abuse problem who
> did not choose to volunteer for RDAP may be required to
> participate in TDAT as a condition of participation in
> a community-based program, with the approval of the
> Transitional Drug Abuse Program Coordinator.
> (c)  Inmates who successfully complete RDAP and who
> participate in transitional treatment programming at an
> institution must participate in such programming for at
> least one hour per month.

complete transitional drug abuse treatment in less than 120 days.

The implementing instructions in program statements were not subject to APA rule-making. *See* 5 U.S.C. § 553(b)(A) ("Except when notice or hearing is required by statute, [APA rule-making] does not apply - (A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice").

## DISCUSSION

Recognizing that this Court does not have jurisdiction to review individualized determinations relating to RDAP participation and early release eligibility, Petitioner clearly states that he is not challenging the individualized determination that he is ineligible for RDAP based on pending warrants/detainers.[8]   Rather, he asserts he is (1) raising "a categorical challenge to the BOP's policy of denying 'eligible prisoners' participation in RDAP as violating § 3621(e)(1)(C); and (2) raising a categorical challenge under § 706 of the APA to both the denial of participation in RDAP and the disqualification from the sentence reduction incentive for persons deemed inappropriate for community corrections."   (#25, Reply at 6.)   He further asserts that, even if the rules are a valid exercise of the BOP's authority under the statute, the rules are procedurally invalid under the APA. (*Id.* at 11-12.)

Respondent argues the petition should be denied because:

---

[8]*See Reeb v. Thomas*, 636 F.3d 1224 (9th Cir. 2011)(courts lack subject matter jurisdiction to review individualized RDAP determinations.)

(1) this Court has already upheld the validity and reasonableness of PS 7310.04(10)(f)[9];

(2) the Ninth Circuit has already found that requiring participation in a community-based treatment program for successful completion of RDAP is a permissible construction of 18 U.S.C. § 3621(e);

(3) 28 C.F.R. § 550.53 is a published regulation that was subject to the rigors of the APA ... and entitled to full *Chevron* deference; and,

(4) It is not relevant whether Petitioner's outstanding warrants will expire prior to his projected release date because he must be eligible for RRC placement at the point he would begin RDAP pursuant to BOP policy."

(#19, at 3.)

## I. BOP's construction of the statute.

A. Standards.

As set forth by the Supreme Court in *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, a court reviews an agency's construction of a statute it administers as follows.

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

_____

[9]Program Statement 7310.04(10) specifies: "Inmates in the following categories shall not ordinarily participate in CCC programs: * * * (f) Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement."

467 U.S. 837, 842-43 (1984). The meaning or ambiguity of certain words or phrases in a statute may only become evident in the context of the entire statute. *See National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 646-47 (2007).

"*Chevron* deference is appropriate 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Astrue v. Capato ex rel. B.N.C.*, 132 S.Ct. 2021, 2034 (2012)(quoting *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). To survive review under *Chevron*, an agency's interpretation need only be a permissible interpretation of the statute, and a court will defer to agency regulations promulgated after notice-and-comment so long as they are not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

B. Analysis

Following notice-and-comment rulemaking, the BOP published the 2009 rules governing drug treatment programs under the authority delegated to its Director in 28 C.F.R. § 0.96. *See* 74 Fed.Reg. 1892-01 (Jan. 14, 2009). Petitioner argues the statute unambiguously identifies which inmates must be admitted to RDAP in § 3621(e)(1)(C) and that "it is contrary to the statutory requirement that the BOP 'provide residential substance abuse

13 - OPINION AND ORDER

treatment (and make arrangements for appropriate aftercare)' for 'all eligible prisoners...'" for the RDAP admission criteria to require that an inmate must be able to complete the TDAT component "when beginning [RDAP]". (#25, at 7.)  The Court disagrees.

**(1)  Statutory construction of § 3621(e)(1)(C).**

As the agency charged with carrying out the congressional mandate for residential substance abuse treatment in federal prisons, the BOP has the authority to publish rules for the management of RDAP, including rules that establish admission criteria, unless Congress has spoken to the issue and the statute unambiguously establishes congressional intent to limit the BOP's authority to do so.  Petitioner argues that "all eligible prisoners," as found in § 3621(e)(1)(C), precludes the BOP from publishing rules that disqualify prisoners from RDAP because they cannot complete the required TDAT component. However, the language "all eligible prisoners" and the definition of "eligible prisoner" specified in § 3621(e)(5)(B) do not stand alone.  To have meaning and not conflict with the BOP's overall authority over the management of Federal prison programs, these provisions must be read in the context of § 3621(e) and § 3621 as a whole.

Section 3621(b) charges the BOP with designating the appropriate and suitable place of imprisonment for federal inmates, authorizes the BOP to transfer a prisoner from one facility to another at any time, and requires that the BOP provide appropriate substance abuse for each prisoner the Bureau determines has a

14 - OPINION AND ORDER

treatable condition of substance addiction or abuse. Section 3621(e)(1) specifies that, to satisfy the requirement for appropriate substance abuse treatment in subsection (b), "the Bureau shall, subject to the availability of appropriations, *provide residential substance abuse treatment (and make arrangements for appropriate aftercare)*--[.]" (Emphasis added.) Section 3621(e)(3)(A) requires that the BOP provide "a detailed quantitative and qualitative description of each substance abuse treatment program, residential or not, operated by the Bureau" in an annual report to Congress. These provisions do not convey an unambiguous intent by Congress to limit the BOP's authority to define the programs it establishes to satisfy the drug treatment mandate. Quite the contrary. They are broad grants of authority with a reporting requirement. The Court, therefore, concludes that the statutory gap with respect to the quantitative and qualitative description of the residential substance abuse treatment program is to be filled by the BOP, and may include defining required components of the program.

In § 3621(e)(5)(B), the statute broadly defines "eligible prisoner" for residential treatment purposes as a prisoner the BOP has determined has a substance abuse problem and who is willing to participate in a residential substance abuse program. However, while Congress provided a definition of "eligible prisoner" that sets forth two criteria for residential treatment eligibility, defining two criteria does not unambiguously convey an intent to

15 - OPINION AND ORDER

foreclose the BOP from also taking into consideration factors that are inherent in the BOP's overall mandate in § 3621 to manage prison programs and to provide *appropriate* substance abuse treatment. Factors such as: the history and characteristics of the prisoner, their security designation, their ability to understand and perform the requirements of a program, and the sentence imposed. More fundamentally, § 3621(e)(3)(B) requires that the BOP's annual report to Congress include "a full explanation of how eligibility for such [substance abuse treatment] programs is determined, with complete information on what proportion of prisoners with substance abuse problems are eligible[.]" The Court, thus, concludes § 3621(e)(1)(C) is not intended to foreclose the BOP from publishing admission criteria for RDAP, and the admissions criteria are entitled to deference under *Chevron*, so long as they are not arbitrary, capricious, or manifestly contrary to the statute.

### (2) TDAT as an admission criteria.

In implementing the mandate for residential substance abuse treatment, the BOP defined RDAP such that it includes three required components: the unit-based component that provides 500 contact hours over nine to 12 months; follow-up services as time allows before the transitional component; and transitional drug abuse treatment in a community-based program. *See* 28 C.F.R. § 550.53-56. In designing RDAP to include three components, the BOP relied on treatment principles recognized by the American

16 - OPINION AND ORDER

Psychiatric Association ("APA"). The requirement that inmates complete "transitional services programming in a community-based program and/or in a Bureau institution" is first found in the RDAP regulations published in 1995. 28 C.F.R. 550.56; *see also* Fed. Reg. 60 FR 27692-01 (May 25, 1995), 1995 WL 314099(FR). In finalizing three interim final rules published in 1995, 1996, and 1997, the BOP published and addressed comments relating to the community-based drug treatment requirement. *See* 65 Fed.Reg. 80745-01 (Dec. 22, 2000), 2000 WL 1865544 (FR). The BOP incorporated input from the APA, but specifically stated that the BOP "does not believe that it is practicable to enhance transitional services within the institution sufficiently to ensure the intended results." *Id*. at *80747. Responding to an APA comment that ineligibility for community based treatment should not preclude RDAP participation, the BOP reiterated its position that the community based treatment component was an essential complement to institutional treatment and critical for treatment success. *Id*. at *80747-48. And in response to public defenders expressing concern about exclusion of inmates with detainers from community corrections, the BOP reiterated that the residential treatment program requires a community-based treatment component to ensure optimal treatment outcomes. *Id*. Petitioner argues his inability to satisfy the TDAT requirement cannot be used to disqualify him from RDAP since he is otherwise statutorily eligible. The Court disagrees.

17 - OPINION AND ORDER

In *McLean v. Crabtree*, 173 F.3d 1176, 1182-83 (9th Cir. 1999), the Ninth Circuit upheld the BOP's authority under the statute to require that inmates complete the community treatment component (TDAT) to successfully complete RDAP and be eligible for the early release incentive under § 3621(e)(2)(B).[10]  Petitioner argues that because *McLean* challenged the TDAT requirement in the context of inmate ineligibility for early release under § 3621(e)(2)(B), it does not speak to the validity of the admission requirement in the 2009 regulations.  Petitioner's argument is unavailing.

In *McLean*, the Ninth Circuit made two distinct findings. First, the circuit court analyzed the validity of the regulation that required prisoners to complete TDAT as a component of RDAP to successfully complete that program.  The Ninth Circuit concluded that the TDAT requirement was a permissible construction of the statute.  The circuit court then reviewed whether it was permissible for the BOP to disqualify inmates from early release eligibility if they could not complete TDAT, and thus could not successfully complete RDAP.  The Ninth Circuit held that it was permissible under the statute for the BOP to disqualify inmates from RDAP and the early release incentive if they could not complete TDAT.  Because the analysis upholding the TDAT requirement

---

[10]The Fifth Circuit upheld the same provision in an almost identical challenge in Rublee v. Fleming, 160 F.3d 213, 215 (5th Cir.1998)(permissible interpretation of statute to require TDAT and disqualify those ineligible for RRC placement from early release eligibility).

stands independently of the analysis upholding early release
disqualification, the validity of the TDAT requirement as a
component of RDAP is applicable in reviewing Petitioner's challenge
to the RDAP admissions criteria.

Even if this Court did not apply the holding in *McLean*, an
independent analysis leads to the same conclusion, that requiring
that inmates complete TDAT is a permissible construction of the
statute and entitled to deference under *Chevron*.

Section 3621(e)(1) specifies: "*in order to carry out the
requirement of the last sentence of subsection (b)* of this section,
that every prisoner with a substance abuse problem have the
opportunity to *participate in appropriate substance abuse
treatment*, the Bureau shall, subject to the availability of
appropriations, provide residential substance abuse treatment (and
make *arrangements for appropriate aftercare*)--[.]"   (Emphasis
added.)   Use of the adjective "appropriate" signals an intent to
convey to the BOP the authority to design treatment programs that
are suitable or proper to address substance addiction or abuse.[11]
It also implies that there will be a determination made as to which
treatment is suitable or proper for a prisoner.   The statute does
not unambiguously convey an intent by Congress to limit the BOP's

---

[11]"Appropriate" (adj.): "(1) suitable or fitting for a
particular purpose, person, occasion, etc." - Random House
Webster's Unabridged Dictionary, 2nd ed.; or "specially suitable:
fit; proper" - Websters 3rd New International Dictionary,
unabridged.

authority to define the substance abuse treatment programs it establishes in response to the mandate to provide treatment.

As designed, RDAP is consistent with § 3621(e)(5)(A), which defines residential substance abuse treatment as consisting of individual and group activities and treatment that last at least 6 months, in a residential facility set apart from the general prison population; and the TDAT component specifically addresses the requirement for community-based aftercare.  Defining RDAP as a program with three required components is a permissible construction of the statutory directive to provide appropriate residential substance abuse treatment, and it is neither arbitrary nor capricious, nor contrary to the statute for the BOP to disqualify prisoners from RDAP admission if they are disqualified from any of RDAPs required components.  The RDAP admission criteria are, therefore, entitled to deference.

**(3)  Disqualification from the early release incentive.**

Petitioner challenges the BOP's authority to disqualify him from the early release incentive based on his inability to complete all required components of RDAP as a result of outstanding state warrants.  Petitioner cites to *Rodriguez v. Smith*, 541 F.3d 1180 (9th Cir. 2008), in arguing that the reasoning in *Kurt v. Daniels* which upheld the BOP policy denying RRC placement to inmates with outstanding detainers/warrants is no longer valid. *Kurt v. Daniels*, 3:06-cv-00726-MO  (D.Or.  Feb.  14,  2007)  (upholding  PS P7310.04(10)(f)).

20 – OPINION AND ORDER

In *Rodriguez*, the Ninth Circuit held that "[b]ecause the BOP regulations categorically exclude CCC placement of inmates with more than ten percent of their sentences remaining, they necessarily fail to apply the mandatory factors listed in § 3621(b) to those inmates[,]" and are invalid. 541 F.3d at 1187. In *Kurt*, this Court upheld PS P7310.04(10)(f), which denies RRC placement of inmates with pending charges or detainers, finding the restrictions permissible under § 3621(b)(3) (directing the BOP to consider five factors, including the characteristics and history of the inmate in determining eligibility for RRC placement). The Court was unconvinced that because the relevant statute requires the BOP to *consider* all five factors in making community correction placement decisions, the BOP was precluded from denying eligibility based on just one of those factors. The Court finds nothing in *Rodriguez* that undermines its conclusion in *Kurt* that PS P7310.04(10)(f) is a reasonable statutory interpretation under *Chevron*, and that it is permissible to deny RRC placement based on one of the five factors to be considered pursuant to 3621(b). To the extent Petitioner argues the BOP must apply the five enumerated factors, he presents no evidence the Unit Team at Sheridan did not do so. And the record shows Petitioner's Unit Team closely reviewed his Presentence Report ("PSR"), investigated pending warrants, and made determination that he was ineligible for RRC placement based on unresolved warrants. (#21, at 3-4.)

21 - OPINION AND ORDER

Moreover, it is well established that the statute governing RDAP does not convey a protected interest in the early release incentive under § 3621(e)(2).  *See Lopez*, 531 U.S. 230, 241-42 (2001); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Jacks*, 114 F.3d at 986 n.4; *Downey v. Crabtree*, 100 F.3d 662, 670 (9th Cir. 1996) (statutory language of § 3621(e) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction. . . . Relevant legislative history also supports this conclusion.") Furthermore, the BOP's authority to disqualify statutorily eligible inmates from the early release incentive has been upheld.  *See Lopez*, 531 U.S. at 242; *Peck v. Thomas*, 2012 WL 2308187 (C.A.9(Or.))(upholding disqualification based on conviction for firearms possession); *McClean*, 173 F.3d 1176 (upholding disqualification of inmates with detainers); *Rublee v. Fleming*, 160 F.3d 213, 215 (5th Cir.1998)(same).

**4.    Challenged rules are procedurally valid.**

The Court has reviewed Petitioner's claim that the rules he challenges are procedurally invalid under the APA and finds his arguments unavailing.  APA rulemaking does not require the BOP explain or justify the self-explanatory admission criteria that requires prisoners be eligible for all required components of RDAP to be admitted to the program.  Determining the eligibility of inmates for RDAP rests with the BOP.  *Tapia v. United States*, 131

S.Ct. 2382, 2390-91 (2011)("A sentencing court can *recommend* ...[placement] in a particular facility or program ... [b]ut decisionmaking authority rests with the BOP."). Determining whether an inmate is eligible for placement in an RRC also rests with the BOP, and is not reviewable by the Court. *See Binford v. Thomas*, 2011 WL 1791198 (D.Or. May 10, 2011)(applying reasoning from *Reeb v. Thomas*, 2011 WL 723106, to find substantive discretionary RRC decisions not reviewable in district court.)

## CONCLUSION

Based on the foregoing, Petitioner's Amended Petition for Writ of Habeas Corpus (#11) is DENIED.

IT IS SO ORDERED.

DATED this __28__ day of September, 2012.

Michael W. Mosman
United States District Judge

23 - OPINION AND ORDER